FLEMING, Administrator, Office of Temporary Controls, v. SILVERMAN et al.

No. 45C1033.

District Court, N. D. Illinois, E. D.

April 15, 1947.

Isadore L. Kovitz, William J. Corrigan, and George Hall, all of Chicago, Ill., for plaintiff.

Cohon & Goldstein, of Chicago, Ill., for defendant.

CAMPBELL, District Judge.

In this action for treble damages of $52,308.03 for alleged violations of price regulations governing the sales of meat and meat products, the answer of defendant Harry Silverman raised the defense of immunity under the Compulsory Testimony Act of 1893, 49 U.S.C.A. § 46, which was made applicable to investigations under the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 922(g). The plaintiff has moved to strike the portions of this defendant's answer which set up the defense of immunity, on the ground that this is not an action for a penalty or forfeiture within the meaning of the Compulsory Testimony Act and that neither that act nor the constitutional privilege against self-incrimination protects the defendant in a civil action such as this proceeding.

This court has recently had before it the related question of the extent to which the constitutional privilege against self-incrimination shields a defendant from answering interrogatories concerning certain sales which gave rise to an action for alleged violations of the Emergency Price Control Act of 1942. Porter v. Heend et al., d/b/a The National Electric Tool Co., D.C., 6 F.R.D. 588. I pointed out in that case upon an analysis of the privilege against self-incrimination that its application in a particular case could not be determined simply by designating the case as civil or penal in nature. It is therefore necessary to examine the facts giving rise to this defense in this case.

The basis of the defendant's claim of immunity in this case is that he appeared at the local offices of the Office of Price Administration on March 28 and April 4, 1945, in response to a subpoena duces tecum. On these occasions he was asked certain questions concerning the sales invoices which he had produced in compliance with the subpoena.

The parties have been unable to stipulate concerning what occurred at the O.P.A. Office. Depositions have therefore been taken from the defendant, his attorney, and two of the O.P.A. Officials present at those meetings. The depositions of the defendant, Harry Silverman, and of his attorney, Harry Abrahams, indicate that on both occasions Abrahams claimed the immunity of the Compulsory Testimony Act for his client, who then answered questions put to him by Charles W. Quinlan of the meat enforcement section of the Chicago Metropolitan Office of the O.P.A.

Taking the version of events most favorable to the defendant, which is that given in his deposition and in that of his attorney, it appears that the defendant was chiefly questioned about some of the sales invoices with respect to abbreviations, illegible entries, and the lack of certain entries relating to quality of meat covered by particular invoices. The defendant was also asked whether the prices shown on the invoices were the prices charged his customers, and replied in the affirmative. It also appears that he was asked some questions concerning the names of his customers, since it seems that on some invoices the customer's complete trade name and address were not given.

As I discussed at some length in the Reend case, cited above, business records required by law to be kept as an aid in the enforcement of regulatory legislation are quasi-public records which do not come within the scope of the privilege against self-incrimination. I therefore held in the Reend case that if the Administrator chose to elicit information, to which he was entitled, by way of interrogatory instead of by inspection of records, the defendant could not resist on the ground of self-incrimination.

In the instant case the plaintiff's agents were examining defendant's sales invoices, which do not come within the scope of the privilege against self-incrimination for the reasons already given. This examination was made in the course of their duty in attempting to detect violations of the price control program. In the course of that investigation it became necessary to question the defendant concerning defects in those records, viz., incomplete entries, illegible entries, and abbreviated entries. On this analysis it is obvious that the defendant cannot, by maintaining defective records, require the plaintiff to exchange immunity from prosecution for the balance of the information to which the plaintiff is entitled. The purpose of the Compulsory Testimony Act does not require law enforcement officers to make such a one-sided bargain.

In one respect, however, the plaintiff's agent came close to the boundary beyond which the defendant would be immune from prosecution. When he asked whether the prices shown on the invoices were the prices actually charged customers, he entered upon a line of inquiry which, if pursued, would have made the defendant's claim of immunity effective. By the defendant's own testimony, however, it appears that when he answered in the affirmative, no further questions of this sort were asked. Since no incriminating facts were confessed by the defendant in response to this question, and since there was no vigorous interrogation along this line in an attempt to elicit damaging evidence from the defendant, I do not think that the defendant's simple assertion that the prices charged were as shown on the invoices, in response to a single question, is sufficient to protect the defendant from suit. It is clear from the depositions that most of the questions directed at the defendant concerned the incompleteness of his records, which are matters which the Administrator had a right to know.

The plaintiff's motion to strike those portions of the defendant Harry Silverman's answer claiming immunity under the Compulsory Testimony Act is granted.